UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Top Trumps USA Inc., ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: 22 Civ. _____ (___) |
| vs. ) | |
| ) | |
| Richard Wyrgatsch, II, pka "OG Slick" ) | Judge: |
| ) | Magistrate Judge: |
| Defendant. ) | |
| ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Top Trumps USA Inc. ("TTUI") brings this action for declaratory judgment against Defendant Richard Wyrgatsch, II, pka "OG SLICK" ("Defendant"), and for its Complaint alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action under the Declaratory Judgment Act seeking to validate TTUI's depiction of Defendant's graffiti mural in a game square contained in a TTUI city edition of "Monopoly" devoted to Worcester Massachusetts.

2. TTUI is a toy and game manufacturer, based in Providence, RI, that makes an assortment of educational card and board games, and has strategic licensing partners across the world, including Hasbro, Disney, Warner Brothers, Marvel and Nickelodeon.

3. In 2020, TTUI acquired a license from Hasbro to manufacture and sell official "city editions" of the world-famous "Monopoly" board game. These community editions are intended to celebrate individual cities, and are customized for each separate community in order to highlight landmarks and places of public interest having local relevance or significance to

1

present and former residents.  Each grouping of "properties" on the City Monopoly Edition board (i.e., the colored squares available for purchase during the game) pertains to a certain set of places or landmarks within that community.  For example, one grouping may focus on local colleges and universities, while another may focus on state, city or neighbor parks or recreation centers, and a third may focus on museums or local attractions.

4. On November 16, 2021, TTUI began selling a City Monopoly Edition devoted to Worcester, MA (the "Game").  Among the grouping of squares on the board for the Game was a trio of "properties" celebrating public art works found in the city.  A photo of the board for the Game is attached as **Exhibit 1**.

5. One square on the board for the Game includes a photograph of a portion of the building exterior of the Worcester, MA "The Palladium" concert venue, which photo shows a mural painted by Defendant as part of the POW! WOW! Worcester Festival in 2018 depicting a play on the classic 1960s "Smiley Face" created by Harvey Ball, a native of Worcester (the "Mural").  The Mural was one of 24 pieces created as part of the POW! WOW! 2018 Festival, an annual event conceived for a number of reasons, among them enhancing connectivity between different neighborhoods in the city, advocating for youth arts education, inspiring change, promoting diversity and inclusion, amplifying the beauty or Worcester's neighborhoods, contributing to a greater quality of life, and creating a genuine sense of community through public art.

6. In November 2021, Defendant contacted TTUI's licensor Hasbro asserting that the aforementioned photo in which the Mural could be seen (the "Photo") was an unauthorized mechanical reproduction of Defendant's "famous original signature artwork" and that marketing, advertising and sale of the Game containing the Photo constituted willful copyright infringement

and trademark infringement. Defendant's attorney offered to engage in discussions to attempt to resolve the matter without resort to legal proceedings. This letter was forwarded to TTUI by its licensor Hasbro.

7. In subsequent correspondence and conversations with Defendant's attorney, TTUI has denied the allegation that the inclusion of the Photo in the Game constitutes willful infringement of Defendant's copyright and/or or trademark rights. Nevertheless, TTUI offered to replace the Photo in future print runs of the Game in order to eliminate any potential concerns that Defendant might have from the inclusion of the Photo.

8. Despite TTUI's response and stated position, Defendant's attorney continued to assert the position that TTUI's actions were infringing, in violation of Defendant's copyright rights, trademark rights and rights of publicity, that each claim brings significant damages, that Defendant damages would constitute both Defendant's losses, in the form of a six-figure license fee for commercial use of the Mural, plus the entirety of TTUI's profits from the sale of the Game, and that if a financial arrangement could not be met then Defendant would proceed to litigation.

9. TTUI did not infringe Defendant's alleged copyright and therefore refused to accede to Defendant's unjustified demands.

10. TTUI files this declaratory judgment action to resolve Defendant's baseless claims and obtain declaratory judgment that: (i) photograph of the building wall containing the Mural and the incorporation of that photograph into the Game constituted a fair use given the history of the smiley face, the archival nature of the Game for the Worcester community, and the transformative nature of the use; (ii) neither the Photo itself nor the inclusion of the Photo in the Game infringes Defendant's alleged copyright; (iii) neither the use of the Photo on the Game

board nor its inclusion on packaging for the Game infringes any of Defendant's alleged trademarks; (iv) neither the use of the Photo on the Game board nor its inclusion on packaging for the Game infringes Defendant's right of publicity; (v) the use of the term "Slick" in connection with the Photo was an attribution to the artist and not a violation of Defendant's trademark rights or rights of publicity; and (vi) the Photo and its use in the Game does not violate any of Defendant's other rights.

## PARTIES

11.Plaintiff Top Trumps USA Inc. is a Delaware corporation with its principal place of business located at 150 Chestnut Street, 4th Floor, Unit #9, Providence, RI 02903-4649.

12.Defendant Richard Wyrgatsch, II, an adult individual, created the mural depicted in the Photo. Upon information and belief, Defendant is a resident of Los Angeles, California.

## JURISDICTION AND VENUE

13.Because this action arises under the copyright laws of the United States, 17 U.S.C. §§101 et seq., this Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1338, and the Declaratory Judgment Act, 28 U.S.C. §2201.

14.This court may exercise personal jurisdiction over the Defendant in that he traveled to Massachusetts and spent time in Massachusetts in order to prepare for and participate in the POW! WOW! Worcester Festival, received a key to the city of Worcester, Massachusetts in September 2018, and otherwise has transacted business and/or engaged in other persistent sources of conduct in Massachusetts, including through the sale, and the ongoing offering for sale, of "O.G. Slick POW!WOW! Merch" made available for purchase exclusively though the POW! WOW! Worcester online store.

15. Venue is proper in this District pursuant to 28 U.S.C. §1391 because the Mural is located in, and the Game is substantially primarily marketed and sold in, Worcester, and thus a substantial part of the property that is the subject of this action is situated in this District, and a substantial part of the harm threatened to Plaintiffs is occurring in this District by reason of the facts set forth in this Complaint.

16. An actual case or controversy exists between the parties because Defendant has threated to sue TTUI, has accused TTUI of copyright infringement, and demanded that TTUI cease and desist from selling the Game and pay Defendant damages arising from the sales of the Game to date.

## FACTS

17. TTUI is a toy and game manufacturer founded in 2008 that is known for making an assortment of world-famous educational card and board games, including Top Trumps, Match, Quiz and Monopoly.  TTUI has secured licenses from strategic partners across the world for a wide variety of brands, including Disney, DC Comics, Marvel, Harry Potter, Lord of the Rings, Elvis Presley, James Bond, and the NFL.

18. Among the products created and sold by TTUI are community or "city" editions of the world-famous "Monopoly" board game (the "Community Editions").  TTUI designs each of the Community Editions so as to celebrate the particular city on which it is focused, providing residents with a unique and memorable keepsake that honors their past or present home, and providing visitors with a travel log with which to remember the city.

19. The Community Editions are customized in order to highlight landmarks and places of public interest having local relevance or significance to present and former residents. Like the original game of Monopoly with which consumers are most familiar, the Community

Editions contain groups of "properties"; however, on a Community Edition game board (i.e., the colored squares available for purchase during the game) those "properties" refers to actual places, businesses, landmarks or places of interest found within the city on which it is focused. By way of example, instead of the well-known "Marvin Gardens", "Boardwalk" and "Park Place", a Community Edition will instead contain a group of "properties" that highlight local institutions of higher learning, while others may celebrate local museums, local amateur and/or professional sports teams, local businesses, local imagery or local tourist attractions.

20. The Community Editions weave the iconic MONOPOLY brand name and weave it in with iconic locations throughout the communities selected, locations that purchasers instantly recognize and gravitate towards. As a result, these specialty games serve as a time capsule for residents, or as a travel log for visitors, and provide the purchasers with a snapshot of their community at the time the games are created, allowing players to be able to revisit the community and look fondly on those memorable elements (and their attendant memories) any time they play the game.

21. TTUI does not pay a license fee for the inclusion of businesses, institutions or locations in these Community Editions; in fact, they are often paid a fee <u>by</u> such local businesses in order to be included in Community Edition.

22. In 2021, TTUI produced a Community Edition focused on the city of Worcester, Massachusetts, containing reference to iconic buildings and businesses in Worcester, artists who created well-known murals, as well as some lesser-known businesses. Among the memorable city highlights contained in the Game were the Worcester Ecotarium, the Burnside Fountain (the image focused on the bronze statue of a young boy riding a sea turtle), historic Elm Park,

Bancroft Tower, Worcester Academy and Table Talk Pies, a family-owned manufacturing business founded in 1924.

23. One trio of squares on the board for the Game focused on public artwork; specifically, three murals painted on the walls of buildings located in Worcester, MA. These building walls are all clearly visible to the general public from publically accessible locations.

24. One of the Game's squares contains a photograph of an exterior wall for the "The Palladium" concert venue in Worcester in which the Mural, painted by Defendant as one of the twenty-four (24) murals for the 2018 POW! WOW! Worcester festival, is visible.

25. The POW! WOW! organization and movement began in Hawaii and has grown to involve an international network of artists who create outdoor murals in cities around the world, including Israel, Japan, Korea, Guam, Taiwan and several cities in the United States. These festivals all started with the basic intention of building bridges between internationally renowned artists and locals by exposing residents to what is going on artistically in other parts of the world, with the public invited to observe the creative process. The various POW! WOW! festivals focus on re-imaging public spaces, including building walls slated for destruction.

26. The POW! WOW! Worcester Festival is an annual event that started in 2016 and was conceived for a number of reasons, among them enhancing connectivity between different neighborhoods in the city, advocating for youth arts education, inspiring change, promoting diversity and inclusion, amplifying the beauty or Worcester's neighborhoods, contributing to a greater quality of life, giving the people of Worcester a sense of place and pride, and creating a genuine sense of community through public art. These festivals are not-for-profit events – wall space is volunteered, supplies and lifts are provided by sponsors, and artists are not paid, although flights, hotel rooms and meals are provided.

27. POW! WOW! Worcester's co-founder Che Anderson is quoted on the "discovercentralma.org" website as saying the following in explaining about the Festival, and specifically about the Mural:

> "We repainted this wall in 2018 as an opportunity for the project to show the ever-changing or evolving nature of this art form. It made sense to paint our biggest wall to convey the idea that these aren't here forever. Experience them, take photos of them, enjoy them while you can."

28. Defendant was specifically invited by Anderson to create the "Smiley Face" mural for the 2018 festival after Anderson found out that Defendant had previously done a "Smiley Face" mural in Kobe, Japan for the POW! WOW! Japan festival. Noting that Worcester was the birthplace of the "Smiley Face", created by Worcester native Harvey Ball, Defendant was persuaded to come to Worcester, requesting the biggest wall the festival had so he could create the biggest "Smiley Face". As a result, Defendant's Mural depicts a play on Harvey Ball's classic 1960s "Smiley Face" design.

29. As with the other murals created as part of the POW! WOW! Worcester event in 2018, the public was encouraged to experience the artwork created during the festival and to capture it in photos, given that there was no telling how long the art would remain.

30. TTUI completed work on the design of the Game during 2021, and began offering the Game for sale on November 16, 2021 both online and at nearly a dozen businesses located in Worcester.

31. On November 21, 2021, Defendant's attorney sent a cease and desist letter to Hasbro Inc., alleging that the sale of the Game "constitutes claims including but not limited to willful copyright infringement and trademark infringement, under U.S. and California law, and must immediately cease."

32. Hasbro Inc. forwarded Defendant's demand letter to TTUI, who then engaged directly with Defendant's attorney in an effort to resolve the potential dispute amicably, explaining to Defendant that Hasbro did not design, manufacture or sell the Game and that TTUI was the party solely responsible for creating and distributing the Game.  However, following several months of discussions, on May 16, 2022, counsel for Defendant threatened to sue Hasbro unless the parties were able to reach a resolution, directly or with the aid of a mediator.

33. The use by TTUI of the Photo as a part of the Game constitutes a transformative use of the Mural depicted therein.  Specifically, the use of the Photo in the Game fundamentally transforms the meaning and purpose of the Defendant's Mural.  As described by POW! WOW! Worcester's co-founder, the purpose behind the murals created during their festivals was to illustrate that art isn't forever and could be gone without warning.

34. Additionally, Defendant is known for a unique satirical style with subversive tension.  The Mural is intended to take common figures in pop culture, namely the cartoon "Mickey Mouse" hands and the "Smiley Face" design, and give them a new perspective through the lens of graffiti art.  The use of these known pop icons to express Worcester's culture and identity falls within the hip-hop philosophy to constantly push towards cultural expression through the use of new and innovative measures.

35. By contrast, the purpose of the Game was to allow purchasers of the Game to have lasting memories about, and ongoing access to images of, iconic locations associated with Worcester.  In addition to serving as record of the Mural itself, the inclusion of the Photo also serves to tie the well-known "Smiley Face" design to its city of origin.  Further, the use of iconic locations in the photographs embodied in the Game is a straight-forward, standard approach to presenting information and imagery as it exists in the real world, without any editorializing or

changed perspective.  As a chronicler of the town of Worcester, the Game presents the city as its residents and visitors perceived it in 2021.

36. The Game thus cannot reasonably be perceived as communicating the message of the fleeting nature of art, or of any other message that substantially overlaps with the POW! WOW! philosophy concerning the transitory nature of murals and urban street artwork.  Nor is the Game a tool by which one conveys a new or innovative cultural expression, or intended to give purchasers a new perspective on pop culture icons.  As a result, the message behind the Mural has been transformed as a result of TTUI's use of the Photo in the Game.

37. Photo appears on just one of thirty different squares, and is just one of dozens of photographs used on the Game's board focused on Worcester, its history and its iconic locales.  The Mural is thus not the focus of the Game or the Game's packaging, which contains a collage of images associated with Worcester.  As a whole, neither the Mural nor Defendant's name can be considered to be the focal point of the Game, the Game's packaging, or the marketing or promotion for the Game.

38. The Game is also not a substitute for the Mural, and the inclusion of the Photo in the Game does not usurp the market for Defendant's Mural.

39. Defendant is a graffiti artist known for working at the intersection of commerce and art, and was at the forefront of American streetwear culture.

40. TTUI is involved in the manufacture and design of toys and games, and the Community Games are created by TTUI under a license under the MONOPOLY brand.  The Community Games are just that – traditional board games; TTUI does not produce streetwear or other clothing, and does engage in any other commerce that overlaps with or competes with Defendant's business.

41. TTUI's Game and Defendant's Mural do not target the same commercial markets.

42. TTUI's Game and Defendant's Mural do not target the same audiences.

43. On information and belief, the Game has not decreased demand in the market for Defendant's Mural or depictions of the Mural.

44. On information and belief, the factual inclusion of the Mural in the Game for purposes of chronicling the iconic buildings and locations in Worcester MA would not prevent the licensing of the Mural nor diminish the value of any such licenses.

45. The Defendant's mural was created as part of the 2018 POW! WOW! Worcester festival. As part of the 2018 festival, the Mural was intended to be integrated into the façade of the Palladium concert venue. On information and belief, the Palladium is located in and/or ordinarily visible from a public place.

46. As a part of the POW! WOW! festival, the Mural was created for the functional purposes set forth in POW! WOW! Worcester's mission statement, including to enhance connectivity between different neighborhoods in the city, advocate for youth arts education, inspire change, promote diversity and inclusion, amplify the beauty or Worcester's neighborhoods through public art, and contribute to a greater quality of life. TTUI's development and sale of the Game is not for this or a related purpose.

**Count I**
**Declaratory Judgment of Non-Infringement**
**Under 28 U.S.C. § 2201, *et seq.* (Declaratory Judgment Act) and**
**17 U.S.C. § 101, *et seq.* (Copyright Act)**

47. TTUI hereby incorporates all of the preceding paragraphs as if the same were fully set forth herein.

48. A real and actual controversy exists between TTUI and Defendant as to whether TTUI's inclusion of a photograph depicting Defendant's Mural infringes Defendant's alleged copyright.

49. TTUI is entitled to a judgment declaring that its use of the Photo in the Game does not infringe Defendant's alleged copyright, because the use of the Photo in the Game is not a derivative work based on the Mural, and at most amounts to a *de minimus* use of the Mural.

### Count II
### Declaratory Judgment of Fair Use
### Under 28 U.S.C. § 2201, *et seq.* (Declaratory Judgment Act) and
### 17 U.S.C. § 101, *et seq.* (Copyright Act)

50. TTUI hereby incorporates all of the preceding paragraphs as if the same were fully set forth herein.

51. A real and actual controversy exists between TTUI and Defendant as to whether the Photo and TTUI's inclusion of the Photo in the Game constitutes a fair use of the Mural under the Copyright Act.

52. TTUI transformed the meaning and message of the Mural through its use of the Photo in the Game.

53. The inclusion of the Photo in the Game was for a factual and/or educational purpose in providing a chronicle of the city of Worcester MA, it's history and iconic locales, businesses and other community elements, as seen in 2021, thereby providing means for purchasers to learn (or in future years, to remember) those locales, businesses and elements.

54. The amount and substantiality of the Mural depicted in the Photo was not excessive, as the Photo used what was necessary in order to conjure up the original work.

55. The inclusion of the Photo in the Game provides a historical context concerning the classic 1960s "Smiley Face" created by Worcester native Harvey Ball.

56. TTUI's use of the Photo in the Game does not represent a substitute for the Mural or otherwise undermine the potential market for reproductions of the Mural, merchandise containing or comprising the Mural, or the overall value of the Mural itself.

57. TTUI's inclusion of the Photo in the Game will not have a material effect on the market or potential market for the Mural.

58. TTUI is entitled to a judgment declaring that it made fair use of the Mural in the Game.

### Count III
### Declaratory Judgment of Exemption Under the AWCPA
### Under 28 U.S.C. § 2201, *et seq.* (Declaratory Judgment Act) and
### 17 U.S.C. § 101, *et seq.* (Copyright Act)

59. TTUI hereby incorporates all of the preceding paragraphs as if the same were fully set forth herein.

60. A real and actual controversy exists between TTUI and Defendant as to whether the Mural is exempt from protection under the Architectural Works Copyright Protection Act ("AWCPA"), based upon the terms of 17 U.S.C. §120.

61. Defendant's Mural was created for a functional purpose in furtherance of the mission statement developed and followed by POW! WOW! Worcester.

62. Defendant's Mural was integrated into the façade of the Palladium, a building located in Worcester MA, and is thereby embodied in such architectural work.

63. The Palladium is located in a public place within Worcester MA, and upon information and belief both the Palladium and the Mural are ordinarily visible from a public place.

64. TTUI is entitled to a judgment declaring that the Mural is a part of an architectural work, within the meaning of §120(a), and Defendant cannot prevent the making,

distributing or public display of photographs of the Mural as embodied in the Palladium building, including the Photo used in the Game, under the AWCPA.

### Count IV
### Declaratory Judgment
### Under 28 U.S.C. § 2201, *et seq.* (Declaratory Judgment Act)

65. TTUI hereby incorporates all of the preceding paragraphs as if the same were fully set forth herein.

66. TTUI did not breach any alleged duty to Defendant, or violate any of Defendant's alleged rights, by incorporating the Photo into the Game.

67. TTUI is therefore entitled to a judgment declaring that its use of Defendant's Mural in the Game did not violate any of Defendant's alleged rights.

### Demand for Relief

WHEREFORE, TTUI demands judgment against Defendant as follows:

a. Declaring that inclusion of the Photo in the Game does not infringe upon Defendant's alleged copyright in the Mural;

b. Declaring that TTUI's inclusion of the Photo in the Game made fair use of the Mural;

c. Declaring that Defendant's Mural, as depicted in TTUI's photograph of the Palladium building, is exempt from protection under the AWCPA;

d. Awarding TTUI the cost of suit as incurred in this action and attorneys' fees under 17 U.S.C. §505; and

e. Granting TTUI such other and further relief as the Court deems just and proper.

Respectfully submitted,

**Top Trumps USA Inc.**

By its attorneys,

/s/ Phillip Daman
Daman and Associates, LLP
15 Court Square, Suite 800
Boston, MA 02108
Date:  May 23, 2022


/s/ Michael Lovitz
Lovitz IP Law PC (*pro hac vice*)
8335 Sunset Blvd., Suite 314
West Hollywood, CA 90069
Date: May 23, 2022